Good morning, Your Honors. May it please the Court, Isaac Rosenberg for the United States, I'd like to reserve two minutes for rebuttal. I'm going to start with the Court's question issued last week about the proper standard for dismissing a case as untimely when the defendant is in default. I'm going to start with the bottom line up front. I'm going to offer a caveat, and then I'm happy to unpack both. I'm sensitive to the amount of time that I have, and I do want to get to some of the questions that we have about arguments in the brief, but first, on the bottom line up front about the proper standard, the first thing the Court has to ask is, is the defense waivable? And more often than not, statutes of limitations are waivable. The second possibility is whether the defense is provable as legitimate from the face of the complaint itself, which is not the case here. And then the third, which I've gotten from a D.C. Circuit case, a published D.C. Circuit case from 2019, asks whether the defense is one that implicates the institutional interest of the Court, and statutes of limitations don't typically do that. We have case law, as I recall, that says that a judge can sue a sponte, raise the issue of the statute of limitations, but the analysis has to be based on the face of the complaint. That's right. So turning now to the face of the complaint, if we only look at the face of the complaint, what's our conclusion? The conclusion is that the claim isn't time-barred. The date that matters if Carter is, Carter means what Mr. Page says it means, is that the date of the receipt of the check dictates the date that the government's claim accrues, and the government's complaint doesn't allege that date because it's not relevant to the government's affirmative claim. How does Carter govern this case when the issue in Carter was whether the date of mailing or the date of receipt was the operative date for triggering the statute of limitations? And this case is really, I think the argument that the government is making is that the date that the check was cashed is the operative date for triggering the statute of limitations. Yes, the government's position here, which is consistent with the government's position for decades, is that the date of payment controls. And in Carter, the taxpayer, the person who received the erroneous refund, argued that it could not be the date that he received the check, it had to be the date of mailing, and this court rejected the date of mailing as the date of payment. We did, but did we do so in language that, if read by the casual observer at least, it could be read as saying, we've fixed on the date of receipt as the appropriate date? I mean, the opinion sort of says the date of receipt is the day that the statute begins running. Yes, I think on a very, on a first level read of the opinion, you could glean that as a holding. Here's my concern, and it's not, I must say I'm inclined to think that the other circuits that have directly addressed this issue got it right, but my concern is whether or not as a three-judge panel, we have the ability to say, say Carter is wrong, if you will. Right, I understand. And although we think we have perfectly valid and good arguments on Carter itself and the issue of broader holding about the date that the government's claims accrue as to payment, the Supreme Court's intervening decision in Ogilvie has sufficiently eroded any possible broader holding, and we explained why. So is what you're saying, let me just make sure I understand, so what you're saying is the Supreme Court has left open the possibility that a later date, like the date of cashing, is the operative date? Yes. But Carter really only dealt with a much more narrow set of circumstances. That's correct. Carter was deciding between two possible dates of accrual, neither of which is technically the latest possible date that a government, the government's claim can accrue under 6532b. Well, I want to ask you about the last point you made. Let's assume for the moment, and I know it's not your contention, that Carter is a holding on point and says the date of receipt is the date that triggers the statute of limitations. If it is, I don't understand how the Supreme Court later leaving it open disrupts the holding of Carter at all. We make holdings all the time that the Supreme Court doesn't get to or later leaves open. So the Supreme Court did a few things that the Carter court did not. The first thing that the Supreme Court did was recognize that the language in the statute itself is ambiguous, and then applied the canon that ambiguous statute of limitations against government claims have to be construed strictly in the government's favor. Carter didn't do that. The second thing that the Ogilvy court did, pardon me, the Ogilvy court did is recognize that it was possible that an erroneous refund could be paid as late as the date the check clears, which is completely inconsistent with a view that the latest possible date of accrual is the date that the payment, the check is received in the mail. There's no way to square that consideration in Ogilvy, which was the point of conversation at the oral argument, with what the other courts, the First and Seventh Circuits, have typified as a presumption or assumption by this court in Carter that as between the date of mailing and the date of receipt of the check, the later date control. And I'll point out that almost every single case, except for Woodmansey, where the parties have offered one of two dates for the accrual of the government's claim, the later date has always prevailed. And maybe I can say this in a more practical way that makes sense. The way you can tell a refund is not paid until the government's check clears is if Mr. Page had received the check and we had canceled it before he cashed it, and he were otherwise entitled to keep the money. He could then turn around and sue the government for a refund because he hadn't recovered the tax that he had overpaid. So until the check is cashed and the money leaves the government's account, the government actually hasn't suffered an injury on which it can sue. The language of 7405, which is the statute that authorizes the cause of action, talks about the tax that is erroneously refunded, and it's the tax that the government can recover. The tax is the money itself. It's not the piece of paper. So one of the hypotheticals in Mr. Page's brief is that we could have sued to recover the piece of paper itself. I don't know what the piece of paper is other than an embodiment of a promise to pay or repay a tax overpaid. So until the taxpayer actually gets the tax back in the form of cash, government hasn't suffered an injury, the cause of action hasn't accrued, and as the Supreme Court said in the brief, the government's clock to start suing shouldn't start running before it's suffered an injury and its claim has accrued. You wanted to save some time for rebuttal. I did, Your Honor. I'm not looking to cut you off. Just reminding you that you said that. I will reserve the balance of my time. Thank you. Counsel? Thank you, Your Honors, and may it please the Court. Jacob Spencer on behalf of Appellee Jeffrey Page. The District Court appropriately declined to enter default judgment and dismissed the suit because it is barred by the two-year statute of limitations. Can we separate the two for a second? I take it we're up here on appeal because the Court not only declined to enter a default judgment, which as I understood it would not be an appealable order, but because it also dismissed the case, correct? Yes, Your Honor. So the issue that we asked you all to address is the one I'm first interested in. Our case law, and we try to describe it in talking to your friend, seems to say that the District Court can sui sponte in the context of a request to enter a default judgment, consider the issue of the statute of limitations, but in doing so, it's limited to the face of the complaint. Do you disagree with that characterization? No, Your Honor. That's consistent with our reading, and in the Taiwan Civil Rights Litigation Organization case, which is 486F Appendix 671, the District Court cited that here. So if you agree that the District Court can sui sponte raise the issue of statute of limitations, and I think you agree that the District Court need only look at the face of the complaint at that point, then didn't the District Court err in shifting the burden to the government in proving that their claims were not untimely? Your Honor, three responses. I may have misspoke. We wouldn't think that the District Court can only look at the face of the complaint, but as some of the courts have said, by papers presented by the plaintiff. The second is that no, we don't think the District Court erred, even if you confine yourself to the face of the complaint, because the complaint alleged that the check was mailed on May 5th, 2017, passed on April 5th, 2018, and the complaint was filed March 31st, 2020. So this suit is timely if and only if the check was delivered after March 31st, 2018. And in these circumstances, the common law mailbox rule we think would apply, which holds that if something is sent through the U.S. mails, there's a rebuttable presumption that it's delivered in the usual fashion. And the district judge is entirely correct that 330 days would be very unusual, and the government offered nothing to rebut that presumption. But you agree that if the check-cashing date is the operative date to trigger the statute limitations, the complaint would be timely. And in fact, it would be timely on the face of the complaint. Yes, Your Honor. And I think it's important that that is the only legal question that the government raised on appeal. It's forfeited any challenge to the District Court's conclusion that if Carter requires that the date of receipt of the check is the trigger date, that this suit is untimely. It didn't present any argument in its opening brief. It described this as a pure question of statutory interpretation, subject to de novo review. And I think it's important that the government also didn't present this argument to the District Court. Rather, in the District Court, the government, in its motion for a default judgment, said that the United States has, quote, the United States has established that its action is timely. That's ECF 15 at pages 8 through 11. In its response to the show cause order, ECF 18 at 4, the government said that to prevail on its claim, it must show timeliness of its suit. And in its supplemental pleading at ECF 22 at 9, the government said that this was a question of fact. On page 9 of the government's opening brief, they argue that the statute of limitations period begins on the date that the refund check clears. That's the check cashing date. Yes, Your Honor. Certainly, they presented that statutory interpretation argument. The question they presented to this court is whether Carter meant what it said. Sure. What you're saying is that they didn't preserve an argument that the District Judge aired by taking up this issue sua sponte, or? Or in its factual conclusion, that the suit was untimely, based on the papers the plaintiff presented, or the District Court. Did the plaintiff present any papers? The plaintiff was the United States, Your Honor. Yes. I mean, did the defendant present any papers? No. This is a strange case. I mean, and I don't blame you. You volunteered to take it on on appeal. But the defendant never shows up. The defendant apparently doesn't care. The judge cares. He rules. The government appeals. And then we ask you to make the argument. So it comes up in a very strange context. I agree with that, Your Honor. With one twist, that the District Court did order the government to show cause why its suit should not be dismissed. Yeah, and I think that really is the crux of my earlier question, which is, at the moment that the District Court did that, it broke with our court's precedent to resolve questions, even if it sua sponte raises the statute of limitations, on the face of the complaint, and instead ordered the plaintiff to prove or to plead around why their claims are timely. That's not quite how I read the record, Your Honor. This court's precedent does require the court, when ruling sua sponte on a defense like this, to give the plaintiff an opportunity to respond. So as I read the District Court show cause order, that's what it's doing. It's giving the government an opportunity to respond to the idea that this suit is borrowed. Didn't the District Court also order discovery? No. Well, yes, Your Honor. But the government, in response to the show cause order, argued two things. It presented the same and only question it presents here, which is a clearance date argument as a matter of statutory interpretation. But then it also argued that it should be permitted to take discovery of the defendant to determine when he received the check. That's what the government asked the District Court to do. The District Court agreed and allowed the government to serve interrogatories on the defendant. We've danced you around on the first issue for over half your time, so I want to ask you a very specific question about the second issue. The issue for us, of course, is whether Carter controls or whether it doesn't. You say it does. If it does, should we sue Esponte, call this case in bank? No, Your Honor, because Carter is correct. Moreover, Carter is... But it conflicts with the decisions of two other circuits, does it not? Yes, it does conflict with the decisions of two other circuits, but those decisions themselves conflict with the Supreme Court's holding in Ogilvie. This court is on the right side of the Supreme Court. It should not recall this case, or it should not sue Esponte to take this issue on bond. Well, then, since I have your views on that, tell me why you think Carter controls and why this just wasn't a case in which the court was presented with a choice between two dates, but not a choice between three, since it made no difference in that case. If you got to the date of receipt, the taxpayer lost. Well, I think I'd start, Your Honor, with this is a question of statutory interpretation. This is not a common law case where the court is announcing a rule that it might then refine through further fact patterns. It's a question of what does it mean for a payment to be made within the meaning of the statute. This court considered that question and determined that that means the date the check was delivered. It liquidated the statute, and that is the meaning of the statute. Supreme Court majority did the same thing in Ogilvie. What do you do with Ogilvie when the court says the outer date is the date of cashing? It seems to me what the court there was saying was we don't have to decide what the outer date was because the inner date resolves the case for us. Respectfully, Your Honor, I disagree with that reading of Ogilvie for two minutes. But that language is there, is it not? Well, I think that language is doing something very different from what the government reads it to be doing. First, the majority says that the relevant date is the date that the check was received. Then it addresses a policy argument advanced by the petitioner in that case that the court shouldn't adopt the date of receipt date because the date of mailing date is more clear. And the court says, first, common law courts have been using the date of receipt of the check for many years, and there's no indication that's ever been a problem. And yes, there may be some difficulty in some cases proving the date of receipt, but that's not a worry because the date of clearance sets the outer bounds. They're not saying that's the outer bounds for the statutory interpretation. They're saying that sets the outer bounds for the evidentiary question that the court will be addressing. And then the other reason I think you know that Ogilvie actually held this is that Justice Scalia criticized the majority for deciding an issue that it did not need to decide. I suppose you could say that about every case in which Justice Scalia was in dissent. Well, certainly, but I think he was correct that they did decide this issue. And I think that interpretation of Ogilvie is fully consistent with Carter. I find it odd to the suggestion that Carter has been abrogated by Ogilvie since Ogilvie announced the exact same rule that Carter did and in fact cited Carter for that holding. But I also want to return to the question of whether this was necessary to the decision in Carter because recall that there are two steps in the Carter decision. There's first the statutory interpretation question where the court holds that it's the receipt date, but then it turns to whether the defendant in that case had established its affirmative defense. And it said that there's the essential element of the, it says, quote, the date on which Carter received the check is an essential element of the statute of limitations. And importantly, that entire discussion would have been entirely unnecessary if the negotiation date were the relevant date because there was no question it was undisputed that the case, that the case was timely in that event. Before you sit down, I want to make sure Judge Gould doesn't have any questions for you. I have no question. Thank you. Thank you, Your Honor. We respectfully request that the court affirm. Thank you. Mr. Rosenberg, you've got two and a half minutes or so. Thank you. So one of the questions before was whether we might have waived this by not raising it in our briefing papers in the district court or not having raised it in our blue brief. And the reason why we didn't raise the issue about the dismissal, sui sponte dismissal, is because if the court reverses on that basis alone without saying anything about whether the government is entitled to a default judgment on remand or moves the needle in some direction on the Carter question, we're going to end up right back here on the very same question. Well, but that's another way of saying, you want us to decide the Carter question, don't you? Well, the Carter question is implicit. It cannot be taken out of the court. Well, it could. See, if we were to say, without respect to whether or not Carter was correctly decided or not, the judge exceeded his authority in doing what he did, then we would never get to whether Carter is good law or bad law. So what I read from your brief briefing was sort of, we want you to decide whether Carter controls this case or not. Is that a fair reading? It is. And it's also a fair reading of the red brief. But the fact remains that neither party sought to defend the dismissal. I understand you answered a question that we asked you to answer. But now I'm asking what you want. And I guess what you want us to do is to address whether Carter controls. Another thing I will point out is that. Yes. Yes, of course. Because what will end up happening if the case is remanded strictly because of an error with the dismissal sua sponte. Either we move for default judgment again, and Judge Jill Borg does exactly what he did, or Mr. Page seeks to vacate his default, gets involved in the case files and answer, and then Judge Jill Borg rules on the very same basis that he already ruled. Or he rules in your favor. Judge Gould has a question. Now, we're now our video is frozen. OK, well, he now it's working again. So let's see if we can get this question. Can you hear me? Yes, we can. Go ahead, Judge Gould. Yeah, the tech. Technically, there's a problem. Normally, they set me up with a split screen. So I can see the bench and the advocates. But now on this connection, I'm only seeing the bench. And then I want to see the advocates. I have to shift to watch the YouTube live streaming. OK, let's see if we can deal with that in a second. And do you have a question for Mr. Rosenberg? By the way, both of the advocates are splendidly dressed. No, I have no question. OK, here we go. We now have split screen. Do you have that, Judge Gould? What's your question? Do you now have the split screen? Yes. OK, good. All right. Let's make sure nobody has any other questions for Mr. Rosenberg. I did have one final point. I know we've. Sure, we stopped you probably before your time expired. So go ahead. As far as the date of mailing goes, I would encourage the courts to look at the petitioner's reply brief in Ogilvie, where they advocated strongly against the date of mailing as being an appropriate date. And, of course, we ask that the court reverse the judgment below because this case was timely filed within two years of the date of payment. If Mr. Page had never cashed the check, he never would have gotten the government's money, and there would have been no reason to sue. We could have availed ourselves of administrative tools, which cease to be helpful, cease to be useful once the check clears. And that's why, at the latest possible date, the government's claim can accrue. Under statute of limitations, it's ambiguous and constrains the government's claim. The courts construed that statute of limitations as late as possible. So we ask that the court reverse. No further questions from the panel. We thank both sides for their excellent briefing and arguments in this case, and the case will be submitted.
judges: GOULD, HURWITZ, DESAI